UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELYN YOUMANS,

     Plaintiff,

v.                                     Case No. 04-73320

LOWE'S HOME CENTERS, INC.,             HONORABLE AVERN COHN
LOWE'S COMPANIES, INC., LIBERTY
MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE
COMPANY, LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON, LIBERTY
MUTUAL, LIBERTY MUTUAL GROUP,
THE PAUL REVERE LIFE INSURANCE
COMPANY, foreign corporations,

     Defendants.

_____/

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS,**
**GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT,**
**AND DISMISSING CASE**

**I. Introduction**

     This is an employee benefits case governed by the Employment Retirement

Income Security Act, 29 U.S.C. § 1001, et seq. (ERISA).  Plaintiff Evelyn Youmans

(Youmans) seeks disability benefits under long- and short-term disability plans.  She

names eight defendants in the first amended complaint as follows:

           1.      Lowe's Home Centers, Inc.;

           2.      Lowe's Companies, Inc.;

           3.      Liberty Mutual Insurance Co.;

4.      Liberty Mutual Fire Insurance Co.;

5.      Liberty Life Assurance Co. of Boston;

6.      Liberty Mutual;

7.      Liberty Mutual Group; and

8.      The Paul Revere Life Insurance Co.[1]

Before the Court are two motions: (1) Lowe's Motion to Dismiss the First

Amended Complaint, and (2) Liberty Life's Motion for Entry of Judgment.  For the

reasons that follow, the motions are GRANTED and this case is DISMISSED.

## II. Discussion

## A. Motion to Dismiss

## 1. Legal Standard

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a

claim upon which relief can be granted.  "The court must construe the complaint in the

light most favorable to the plaintiff, accept all the factual allegations as true, and

determine whether the plaintiff can prove a set of facts in support of its claims that

would entitle it to relief."  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th

Cir. 2001).  "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must

contain either direct or inferential allegations respecting all the material elements to

sustain a recovery under some viable legal theory.'"  Advocacy Org. for Patients &

---

[1] The Court will refer to the Lowe's defendants collectively as Lowe's.  The administrative record shows that defendant Liberty Life Assurance Co. of Boston provided the insurance policy at issue; accordingly, the Court refers to the Liberty defendants collectively as Liberty Life.  The docket indicates that The Paul Revere Life Insurance Co. was terminated as a defendant on December 15, 2004.

Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

### 2. Factual Allegations from the First Amended Complaint[2]

Youmans is a former Lowe's employee.  She was the beneficiary under long- and short-term disability plans through Lowe's and one of the named defendant insurance companies had the responsibility of paying benefits to Youmans under the plans.  All of the insurance companies deny responsibility.

Youmans became disabled in 2002 and last worked on December 1, 2002.  She alleges that the defendants are claiming that she had pre-existing conditions that made her ineligible for benefits.  She says that the defendants did not allow her to go on short- and long-term disability even though the defendants knew she was disabled and eligible for short- and long-term disability.  She says that Lowe's did not want her to receive benefits under the disability plans because Lowe's did not want to pay her.  Youmans claims that Lowe's conduct was "an illegal, unethical, and fraudulent act that terminated the relationship and expectancy from Lowe's."

Youmans did not receive benefits after notifying the defendants that she was disabled and eligible for benefits.  She says that she tried to complete various forms and reports and otherwise tried to get the defendants to cooperate with her regarding the terms of her disability policies.  She says that the defendants did not cooperate with her and have deliberately tried to avoid compensating her for her disability.

---

[2] The Court must accept all factual allegations in the first amended complaint as true for purposes of Lowe's Motion to Dismiss.

### 3. Analysis

Youmans alleges violations of various ERISA provisions, specifically ERISA §§ 402, 402(a), 409, 502, 503, and 510.[3]  See First Amend. Compl. at ¶¶ 30-31, 35-36, 38. Lowe's, however, only addresses in its motion Youmans' allegations relating to §§ 502, 409, and 510.

### a. ERISA § 502 (29 U.S.C. § 1132)[4]

Lowe's says that it is not a proper party defendant under 29 U.S.C. § 1132 because Youmans has not alleged that Lowe's retained any control over the administration of the benefits plan.  Lowe's argument is consistent with the standard that the Court of Appeals for the Sixth Circuit articulated in Daniel v. Eaton Corp., 839 F.2d 263 (6th Cir. 1988).  In Daniels, the Sixth Circuit held that an employer is not a proper party defendant in an ERISA action unless the plaintiff demonstrates that the employer controlled administration of the plan.  Id. at 266.

Youmans has not alleged in the first amended complaint that Lowe's controlled administration of the plans.  Indeed, Youmans alleges that "one of the named insurers was responsible for paying" benefits to Youmans.  First Amend. Compl. at ¶ 8. Youmans, however, says in her brief that Lowe's "intentionally deceived Plaintiff

---

[3] Youmans also alleges that the defendants violated state law.  This allegation, however, is without merit, because ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."  See 29 U.S.C. § 1144(a).

[4] Although Youmans alleges that Lowe's "violated" this section of ERISA, Lowe's correctly notes that it cannot "violate" § 502 because the statute simply articulates the civil enforcement provisions of ERISA, including who may bring a claim and under what circumstances.

4

regarding her benefits, including who [sic] actual insurer was." Pl. Br. at 8. Such an allegation is not contained in the first amended complaint, nor does it establish that Lowe's retained control over administration of the plans. Indeed, any attempt by Youmans to make such an argument in response to Lowe's motion is improper. See Jocham v. Tuscola County, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) (noting that the plaintiffs' brief made allegations not present in the pleadings; "the plaintiffs may not amend their complaint through a response brief."). Youmans has failed to state a claim against Lowe's under ERISA § 502.

### b. ERISA § 409 (29 U.S.C. § 1109)

Lowe's says that Youmans' claim for breach of fiduciary duty under 29 U.S.C. § 1109 must be dismissed because Youmans has not alleged harm to the plans. Lowe's claims that ERISA does not create a private right of action for breach of fiduciary duty and that an individual plaintiff may bring such a claim only on behalf of the plan.

Youmans' response to Lowe's argument is puzzling and inconsistent. Youmans says in her brief that "plaintiff may pursue a private cause of action for breach of fiduciary duty under § 1109," and continues by quoting the United States Supreme Court's decision in Varity Corp. v. Howe, 516 U.S. 489 (1996) that "ERISA § 502(a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations." Pl. Br. at 9. Youmans does not even cite appropriate portions of Varity; Youmans instead cites to the case syllabus in Varity rather than the opinion itself. Her confusing response aside, however, she may not attempt to rectify any pleading deficiencies in her response brief by now arguing that she has stated a claim under ERISA § 502(a)(3) rather than § 409, as she alleged in the first amended complaint. Jocham, 239 F. Supp.

5

2d at 732.

Indeed, a review of the first amended complaint makes clear that Youmans has failed to state a claim under ERISA § 409.  It is well established that ERISA does not permit individual recovery, under a fiduciary duty theory, of benefits alleged to have been improperly denied.  Rather, a plaintiff must bring a claim for fiduciary breach only on behalf of the plan.  Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985) ("[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."); see also Adcox v. Teledyne, Inc., 21 F.3d 1381, 1390 (6th Cir. 1994) (holding that a claim for breach of fiduciary duty "permits recovery to inure only to the ERISA plan, not to individual beneficiaries."); Bryant v. Int'l Fruit Prod. Co., Inc., 886 F.2d 132, 135 (6th Cir. 1989) ("ERISA contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery goes to the plan.").  Because Youmans did not allege harm to the plan and is not seeking recovery on behalf of the plan, Youmans has failed to state a claim for breach of fiduciary duty under ERISA § 409.

With respect to Youmans' response that she has stated a claim under ERISA § 502(a)(3), she nonetheless has failed to state a claim under that provision even if the Court ignores her attempt to rectify pleading deficiencies in the first amended complaint through her response brief.  ERISA § 502(a)(3) provides:

**(a) Persons empowered to bring a civil action**
    A civil action may be brought—

. . .

        (3) by a participant, beneficiary, or fiduciary (A) to
    enjoin any act or practice which violates any provision of this
    subchapter or the terms of the plan, or (B) to obtain other
    appropriate equitable relief (i) to redress such violations or
    (ii) to enforce any provisions of this subchapter or the terms
    of the plan.

29 U.S.C. § 1132(a)(3) (emphasis in original).  The express language of the statute

provides that § 502(a)(3) contemplates equitable relief.  Youmans seeks money

damages in her prayer for relief, not equitable relief.  Accordingly, she has failed to state

a claim under § 502(a)(3).

### c. ERISA § 510 (29 U.S.C. § 1140)

Lowe's also says that Youmans has failed to state a claim for interference with

protected rights under 29 U.S.C. § 1140 because she did not plead facts that identify an

adverse employment action that Lowe's took against her to interfere with her right to

obtain benefits under an ERISA plan.

Section 510 of ERISA provides, in pertinent part:

    It shall be unlawful for any person to discharge, fine, suspend, expel,
    discipline, or discriminate against a participant or beneficiary for exercising
    any right to which he is entitled under the provisions of an employee
    benefit plan. . . or for the purpose of interfering with the attainment of any
    right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140.  "Congress designed [§ 1140] primarily to protect the employment

relationship that gives rise to an individual's pension rights.  For conduct to fall within

the parameters of § 1140, it 'must affect the individual's employment relationship in

some substantial way.'" Adcox v. Teledyne, Inc., 21 F.3d 1381, 1391 (6th Cir. 1994).  To

7

state a claim under the statute, a plaintiff must show that the employer had a specific intent to violate ERISA.  Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992).  Absent direct evidence of intent, a plaintiff can establish a prima facie case by showing "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997) (internal quotations and citation omitted).

Here, Youmans failed to plead any facts that Lowe's took an adverse employment action against her to interfere with her benefits.  Indeed, Youmans makes no allegations regarding her employment at Lowe's other than the fact that she "was an employee."  First Amend. Compl. at ¶ 6.  Youmans says in her response brief that "Plaintiff has plead in her Amended Complaint that Defendant Lowe's intentionally misled and withheld information from Plaintiff in order to interfere with her attainment of the STD and LTD benefits to which she was rightfully entitled."  Such allegations, however, are not in the first amended complaint.  Indeed, this conclusory statement is another improper attempt by Youmans to remedy pleading deficiencies through a response brief.  See Jocham, 239 F. Supp. 2d at 732.  She simply has failed to plead a set of facts in the first amended complaint that would entitle her to relief under ERISA § 510.

### d. ERISA § 402 (29 U.S.C. § 1102)

Youmans says in the first amended complaint that "[d]efendants violated § 402 [and §] 402(a) . . . of ERISA."  First Amend. Compl. at ¶ 36.  Section 402 is entitled, "[e]stablishing of plan."  It provides, in relevant part:

**(a) Named fiduciaries**

   **(1)** Every employee benefit plan shall be established and maintained pursuant to a written instrument.  Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

   **(2)** For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a) (emphasis in original).  Despite the fact that Lowe's does not address the viability of this claim in its papers, a review of the first amended complaint establishes that Youmans has failed to allege any facts challenging the writing or fiduciary requirements embodied in 29 U.S.C. § 1102.  Accordingly, the Court decides sua sponte that Youmans has failed to state a claim under ERISA § 402.

### e. ERISA § 503 (29 U.S.C. § 1133)

   Youmans also says that "[d]efendants violated . . . § 503 of ERISA."  First Amend. Compl. at ¶ 36.  Section 503 is entitled "[c]laims procedure."  See 29 U.S.C. § 1133.  Under this section of ERISA,

   [E]very employee benefit plan shall—

   **(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

   **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (emphasis in original).  Lowe's did not mention this allegation in its

9

papers.  The Court, however, has reviewed the first amended complaint and concludes

that Youmans has not alleged any facts that would support a claim under this statute.

Accordingly, the Court <u>sua sponte</u> dismisses Youmans' claim under ERISA § 503.

### B. Motion for Entry of Judgment

### 1. Legal Standard

In <u>Wilkins v. Baptist Healthcare Sys., Inc.</u>, 150 F.3d 609 (6th Cir. 1998), the Court

of Appeals for the Sixth Circuit held that summary judgment procedures may no longer

be used in the Sixth Circuit in denial of benefits actions under ERISA.  In <u>Wilkins</u>, the

court of appeals decided a district court should adjudicate an ERISA action as if it were

conducting a standard bench trial and, therefore, determining whether there is a

genuine issue of fact for trial would make little sense.  <u>Id</u>. at 618-19 (Gilman, J.,

concurring in part). and articulating the decision of the court of appeals on the issue

regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in

<u>Wilkins</u>[5] by rendering findings of fact and conclusions of law based solely upon the

_____

[5] The court of appeals' "Suggested Guidelines" are as follows:

1. As to the merits of the action, the district court should conduct a <u>de</u>
<u>novo</u> review based solely upon the administrative record, and render
findings of fact and conclusions of law accordingly.  The district court may
consider the parties' arguments concerning the proper analysis of the
evidentiary materials contained in the administrative record, but may not
admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative
record only if that evidence is offered in support of a procedural challenge
to the administrator's decision, such as an alleged lack of due process
afforded by the administrator or alleged bias on its part.  This also means
that any prehearing discovery at the district court level should be limited to
such procedural challenges.

administrative record.  See Eriksen v. Metro. Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

## 2. Analysis

### a. Findings of Fact

The following facts are gleaned from the administrative record.

Liberty Life provides short- and long-term disability insurance to Lowe's employees under a group disability income policy (Lowe's disability policy), which became effective on June 1, 2002.  Def. Ex. 1.  UNUM Life Insurance Company of America (UNUM) provided long-term disability benefits to Lowe's prior to June 1, 2002.  Def. Ex. 14.  According to information Lowe's provided to Liberty Life, Youmans was covered by the UNUM long-term disability policy effective January 10, 2002.  Aff. of Lori Meacham at ¶ 16.  She was then covered under Lowe's disability policy effective June 1, 2002.  Id. at ¶ 3.

### i. Short-Term Disability Benefits

On November 12, 2002, Liberty Life received a telephone call regarding a claim for benefits by Youmans under Lowe's disability policy.  Id. at ¶ 4.  Liberty Life subsequently received information that Youmans began medical leave from her position as a cashier at Lowe's on November 29, 2002 so that she could undergo a hysterectomy on December 2, 2002.  Id.

---

3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

Wilkins, 150 F.3d at 619.

11

On December 3, 2002, Liberty Life received a form that was completed by Dr. Kurt Aurand of Grand Blanc, Michigan.  Def. Ex. 2.  Dr. Aurand confirmed that he performed Youmans' hysterectomy on December 2, 2002, and he stated that Youmans should remain off work for eight weeks (i.e., until January 26, 2003).  Id.

On February 12, 2003, Youmans called Liberty Life and said that she would not be returning to work at Lowe's as planned because she was having problems with swelling in her stomach.  Meacham Aff. at ¶ 6.  Two days later, Liberty Life received a letter from Dr. Michael Frappier of Flint, Michigan, stating that he had seen Youmans on January 27, 2003.  Def. Ex. 3.  Dr. Frappier's letter stated that Youmans presented with complaints of fatigue, weakness, and shakiness and that he extended her sick leave by two weeks.  Id.  Dr. Frappier indicated that testing done on January 27, 2003 revealed that Youmans had chronic fatigue syndrome.  Id.  He also said that he saw Youmans on February 20, 2003 for problems with her diverticular disease and irritable bowel syndrome, including constipation and pain.[6]  Id.  He said that he extended her sick leave to March 9, 2003, and that Youmans should return to work on March 10, 2003.  Id.

After it received Dr. Frappier's letter, Liberty Life sent Dr. Frappier a request for medical records, along with a request that he complete a physical capacities form concerning Youmans.  Def. Ex. 4.  Dr. Frappier responded to Liberty Life on February 24, 2003.  Dr. Frappier indicated in his response to Liberty Life that Youmans' "current

---

[6] It is unclear if Dr. Frappier's reference to February 20, 2003 (which is written in his letter as "2-20-03") is a typographical error and should read "1-20-03."  Frappier's letter is dated February 14, 2003, which precedes February 20; therefore, it would be impossible for Frappier to reference an examination of Youmans on February 20 in a letter dated February 14.

signs and symptoms" were severe fatigue, weakness, constipation, and abdominal pain. His response included a February 10, 2003 office chart note that indicated a diagnosis of irritable bowel syndrome.  Id.  The physical capacities form he completed for Youmans reflected his opinion that Youmans was unable to work eight hours each day because of her abdominal pain; he advised that Youmans could work for between four and six hours each day.  Id.

On March 5, 2003, after reviewing the information Dr. Frappier provided, Liberty Life issued an initial determination regarding Youmans' application for short-term disability benefits under Lowe's disability policy.  Def. Ex. 5.  Liberty Life advised Youmans that it approved her claim for short-term disability benefits for the period December 2, 2002 through February 10, 2003, but that it denied her claim for periods after February 10, 2003.  Id.  Liberty Life explained that it denied her claim for the post-February 10 period because:

> The last medical record from February 10, 2003 did indicate a diagnosis of Irritable Bowel Syndrome and Fatigue.  Based on a review of the medical, it was determined that it was not of a severity to prevent you from performing the duties of your occupation.
>
> . . .
>
> We are not indicating a condition did or did not exist.  However, we are stating that we did not have the medical evidence to document a condition that prevented you from performing your occupation as a Cashier II.

Id.  Liberty Life's letter also advised Youmans of her right to request a review of its determination and of the procedures to be followed in connection with any request for a review.  Id.

Liberty Life subsequently received a letter from Youmans dated March 27, 2003.

13

Def. Ex. 6.  Youmans requested reconsideration of Liberty Life's March 5, 2003 decision denying her claim for benefits for the period after February 10, 2003.  Id.  Dr. Frappier also sent Liberty Life a letter dated April 3, 2003, in which he requested reconsideration of Liberty Life's denial of benefits decision.  Def. Ex. 7.  Dr. Frappier stated in his letter that it was his belief that Youmans' symptoms of lower abdominal pain and bloating were severe enough to warrant additional time off.  Id.  He said that Youmans was referred to the emergency room for treatment on March 23, 2003 and that he scheduled Youmans to see a urologist and a gastroenterologist.  Id.  Dr. Frappier wrote that the gastroenterologist's examination of Youmans on March 27, 2003 revealed the need for a colonoscopy to be performed on April 9, 2003.  Id.

Liberty Life received a number of medical records from Dr. Frappier and other sources regarding Youmans, including:

1.  Dr. Frappier's office notes regarding his examinations of Youmans on February 27, March 10, March 24, April 22, and May 12, 2003, all of which indicate a diagnosis of irritable bowel syndrome (Def. Ex. 8);

2.  a report of a March 23, 2003 CT scan, which reflects a normal result (Def. Ex. 9);

3.  a hospital record from an emergency room visit by Youmans on March 27, 2003 (Def. Ex. 10), which states that Youmans' prior medical history was "[s]ignificant for irritable bowel syndrome, hypertension;"

4.  a report from Dr. Dilip Desai, a gastroenterologist from Flint, Michigan, of a colonoscopy performed on Youmans on April 9, 2003 (Def. Ex. 11), which indicates the existence of (a) a sigmoid polyp that was removed with hot biopsy forceps and (b) "[p]ossible irritable bowel syndrome;" and

5.  a letter from Dr. Desai dated April 10, 2003 (Def. Ex. 12), which states his belief that Youmans has irritable bowel syndrome.

14

On July 8, 2003, Liberty Life wrote Youmans and informed her that, after reviewing additional medical information, it was reversing its earlier decision denying her claim for short-term disability benefits for the post-February 10, 2003 period. Def. Ex. 13. Accordingly, Liberty Life informed Youmans that it was approving her request for short-term disability benefits for the period February 10, 2003 through March 2, 2003, which was the maximum period for receipt of short-term benefits under Lowe's disability policy. Id. The letter also informed Youmans that Liberty Life was referring her file to a disability case manager to determine her eligibility for long-term disability benefits under Lowe's disability policy. Id.

### ii. Long-Term Disability Benefits

At the heart of Youmans' claim against Liberty Life is her desire to obtain long-term disability benefits for symptoms she experienced after her hysterectomy. Lowe's disability policy contains an exclusion for disabilities caused by pre-existing conditions.[7]

---

[7] The policy provides as follows:

This policy will not cover any Disability or Partial Disability:

1.      which is caused or contributed to by, or results from a Pre-Existing Condition; and

2.      which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

**"Pre-Existing Condition"** means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

Def. Ex. 1 at LL-0035 (emphasis in original). "Treatment" is defined as "consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered

15

The pre-existing condition exclusion provision is triggered if an insured's disability begins less than twelve months after the effective date of their coverage under Lowe's disability policy.  Youmans' coverage under this policy became effective June 1, 2002. Her disability was effective December 2, 2002, the date of her hysterectomy. Accordingly, Liberty Life's investigation of her eligibility for benefits included an investigation into whether benefits were subject to the pre-existing condition exclusion in Lowe's disability policy.  Def. Ex. 15.

Lowe's disability policy also contains a "transfer" provision that is designed to prevent coverage loss for individuals because of a change in insurance carriers.[8]  Prior

_____

Person chooses to take them or not, and taking drugs and/or medicines."  Id. at LL-0011.

[8] The "transfer" provision provides:

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1.      Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2.      if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy and the prior carrier's policy, the benefit will be determined according to this policy.  However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

16

to being insured under Lowe's disability policy, Youmans was insured for long-term disability benefits under the UNUM policy effective January 10, 2002.  Under the "transfer" provision, Liberty Life had to determine whether Youmans could satisfy the pre-existing condition exclusion in Lowe's disability policy.  If she could not, then Liberty Life had to look to the prior UNUM policy's pre-existing condition exclusion, which was similar to that found in Lowe's disability policy.[9]

Liberty Life informed Youmans about its pre-existing condition investigation in a latter dated July 16, 2003.  Def. Ex. 15.  As part of this investigation, Liberty Life sent Dr. Frappier a request for copies of his office notes relating to Youmans for the period May 2001 through January 2002.  Def. Ex. 16.  Liberty Life received documents from

_____

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

Def. Ex. 1 at LL-0014.

[9] The UNUM policy's pre-existing condition exclusion provided as follows:

This policy will not cover any disability:

1.      caused by, contributed to by, or resulting from a pre-existing condition; and

2.      which begins in the first 12 months after an insured's effective date.

A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.

Def. Ex. 14 at L-BEN-5.

17

Dr. Frappier on August 26, 2003.  Specifically, Dr. Frappier produced notes regarding

his examination of Youmans on September 5, 2001 (Def. Ex. 17); September 28, 2001

(Def. Ex. 18); November 9, 2001 (Def. Ex. 19); and December 11, 2001 (Def. Ex. 20).

All of Dr. Frappier's notes indicate that he treated Youmans for irritable bowel syndrome

during each office visit (indicated in his notes as "I.B.S.").  See Def. Exs. 17-20.

       In addition to requesting records from Dr. Frappier, Liberty Life also requested

prescription records from the pharmacy Youmans identified.  On August 6, 2003, Kmart

store number 4083 in Flint, Michigan, faxed Youmans' prescription records to Liberty

Life.  Def. Ex. 22.  Kmart provided prescription records for the period May 1, 2001

through August 6, 2003.  Id.  According to the records, Youmans received a prescription

for Hyoscyamine, prescribed by Dr. Frappier, on September 28, 2001, and received

similar prescriptions for Hyoscyamine on October 16, November 27, and December 31,

2001.[10]  During this same time period, Youmans also received prescriptions for

Diazepam.[11]  Kmart records indicate that Youmans continuously received prescriptions

---

[10] According to the National Institutes of Health, Hyoscyamine is used to control symptoms associated with disorders of the gastrointestinal (GI) tract:

> It works by decreasing the motion of the stomach and intestines and the secretion of stomach fluids, including acid. Hyoscyamine is also used in the treatment of bladder spasms, peptic ulcer disease, diverticulitis, colic, irritable bowel syndrome, cystitis, and pancreatitis. Hyoscyamine may also be used to treat certain heart conditions, to control the symptoms of Parkinson's disease and rhinitis (runny nose), and to reduce excess saliva production.

See http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a684010.html.

[11] The National Institutes of Health notes that Diazepam is used "to relieve anxiety, muscle spasms, and seizures and to control agitation caused by alcohol withdrawal." See http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/

for Hyoscyamine and Diazepam from October 2001 through June 2002.  Def. Ex. 22.

On August 7, 2003, Liberty Life sent a letter to Dr. Frappier asking him to provide his opinion regarding whether Youmans' fecal retention was related to her hysterectomy or a separate incident.  Def. Ex. 23.  Dr. Frappier responded on August 26, 2003, along with additional medical records that Liberty Life requested.  Def. Ex. 24.  Dr. Frappier wrote that Youmans has "an underlying history of irritable bowel syndrome, but the symptoms have been much worse since her hysterectomy surgery, with multiple fecal impactions requiring hospitalization.  It is however a separate incident."  Id.

Liberty Life requested that all of Youmans' medical records it had received be reviewed by Dr. Steven Miszkiewicz, one of Liberty Life's consulting physicians.  On September 5, 2003, Dr. Miszkiewicz issued a memorandum to the Liberty Life disability case manager handling Youmans' claim.  Def. Ex. 25.  In his memorandum, Dr. Miszkiewicz agreed that Youmans was disabled from performing her job from December 2002 through January 27, 2003 as a result of her hysterectomy.  Id. at LL-0080.  He also concluded that it was his medical opinion that Youmans' irritable bowel syndrome was "nonimpairing" before her surgery and, based on his review of Dr. Frappier's office notes, "there was no significant change in her condition after her surgery.  Therefore, it should not be impairing.  Also, since her IBS symptoms seem identical pre and postoperatively, any attempt to relate the symptoms to her hysterectomy is not valid."  Id.  Dr. Miszkiewicz further stated that Dr. Frappier also diagnosed Youmans with fibromyalgia syndrome and chronic fatigue syndrome but that

a682047.html.  Additionally, Diazepam is used to treat irritable bowel syndrome and panic attacks.  Id.

"[t]hese are clearly not substantiated."  Id.  Dr. Miszkiewicz noted that "fecal retention,"

or, what he said is the correct term, "constipation," "is a hallmark of IBS and is rarely

impairing."  Id.

On September 12, 2003, Liberty Life issued its determination denying Youmans'

request for long-term disability benefits under Lowe's disability policy.  Def. Ex. 26.  In

its letter to Youmans, Liberty Life noted that she had recovered from her hysterectomy

by January 27, 2003 to the point where she was no longer disabled.  Id. at LL-0076.

Liberty Life noted that her irritable bowel syndrome did not appear to be disabling prior

to or after her surgery.  Id. at LL-0077.  This evidence, along with Dr. Frappier's office

notes confirming his treatment of Youmans for irritable bowel syndrome and prescription

records for Hyoscyamine and Diazepam, led Liberty Life to conclude that Youmans'

claim was based on a pre-existing condition.  Id.  Accordingly, benefits were not payable

because Youmans had been treated for irritable bowel syndrome less than three

months prior to the January 10, 2002 effective date of her coverage under the UNUM

long-term disability policy.  Liberty Life's letter to Youmans advised her of her right to

request a review of the denial of benefits determination, as well as the procedures to

follow in connection with any request for review.  Id. at LL-0077-0078.

On December 9, 2003, Liberty Life received via facsimile a handwritten letter

from Youmans dated December 3, 2003.  Def. Ex. 27.  Youmans' letter disputed Liberty

Life's decision denying her claim for long-term disability benefits under Lowe's disability

policy.  Id.  Youmans provided medical records along with her letter that she claimed

proved that she did not have irritable bowel syndrome until after her hysterectomy.  Id.

She also stated in her letter that "if I was diagnosed with IBS no one told me this."  Id.

Youmans requested that Liberty Life provide her with copies of the medical records it used in making its decision to deny disability benefits.  Id.  On December 17, 2003, Lori Meacham, a Liberty Life appeal review consultant, sent Youmans a letter and enclosed a copy of Youmans' claim file in response to her request.  Def. Ex. 28.

On February 5, 2004, Liberty Life received a handwritten letter from Youmans dated February 3, 2004.  Def. Ex. 29.  In her letter, Youmans explained that Dr. Frappier had not informed her of the irritable bowel syndrome diagnosis and that her prescription in November 2001 for Hyoscyamine was to address a problem she had with belching.  Id.  She also stated that the prescriptions for Diazepam were to treat anxiety and hypertension.  Id.

Also on February 5, 2004, Liberty Life issued its determination upholding the denial of long-term disability benefits to Youmans.  Def. Ex. 30.  Liberty Life again concluded that Youmans' irritable bowel syndrome was a pre-existing condition for purposes of the coverage exclusion.  Id.

Youmans then filed the instant action.

### b. Conclusions of Law

### i. Standard of Review

The standard of review in this case is whether the denial of benefits was arbitrary and capricious because Liberty Life has discretionary authority to construe and interpret the policy.  Def. Ex. 1 at LL-0039.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991).  This standard is the "least demanding form of judicial review."  Admin. Comm. of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 165 F.3d 981, 989 (6th Cir. 1999).  A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions."  Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988).  See also Yeager v. Reliance Std. Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996).  Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious."  Davis v. Ky. Fin. Cos. Ret. Plan, 887 F.3d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted).  See also Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc).

### ii. Parties' Arguments

Liberty Life says that it did not act arbitrarily or capriciously in determining that Youmans is not entitled to long-term disability benefits because the administrative record clearly establishes that she had a pre-existing condition of irritable bowel syndrome.  Liberty Life says that in light of (1) the medical records from Dr. Frappier, (2) the prescription records from Kmart, and (3) Dr. Kiszkiewicz's independent review of

Youmans' medical records, there was ample evidence to conclude that Youmans had been diagnosed with and was being treated for irritable bowel syndrome during November and December 2001.  Liberty Life also says that assuming, <u>arguendo</u>, that Youmans could overcome the pre-existing condition exclusion, its decision denying long-term disability benefits should be upheld because Liberty Life reasonably concluded that Youmans' condition was not so severe as to preclude her from returning to her job as a cashier at Lowe's.

Youmans responds that she was diagnosed with "two very unique medical problems with which she was not previously diagnosed, or were not themselves pre-existing in 2001."  Pl. Br. at 6.  Youmans says that (1) she was treated for a sigmoid polyp in April 2003 during a colonoscopy and (2) she was diagnosed with fecal retention after her hysterectomy.  Additionally, Youmans says that her condition was so severe that it prevented her from returning to work.  In support of this argument, Youmans points to Dr. Frappier's statement that it was his opinion that Youmans could not work eight hours each day.  Youmans also takes issue with Dr. Miszkiewicz's conclusions because he (1) "was employed solely for the purpose of rendering such an opinion in favor of Liberty Life" and (2) conducted a review of Youmans' medical records without examining Youmans.

### iii. Conclusion

Having conducted a careful review of the administrative record, the Court concludes that Liberty Life's decision to deny Youmans long-term disability benefits was not arbitrary and capricious.

23

First, with respect to the pre-existing condition exclusion in Lowe's disability policy, Liberty Life did not err in concluding that Youmans should be denied long-term disability benefits based on her pre-existing condition of irritable bowel syndrome. Under the language in Lowe's disability policy's pre-existing condition and "transfer" provisions, Liberty Life had to determine whether Youmans' disability began less than twelve months after the effective date of her coverage under either the Lowe's disability policy or the prior UNUM policy. Youmans' coverage under the prior UNUM policy was effective January 10, 2002. Her coverage under Lowe's disability policy was effective June 1, 2002. Her disability was effective December 2, 2002. Accordingly, her disability began less than twelve months after the effective date of her coverage.

Under the "transfer" provision of Lowe's disability policy, Liberty Life had to examine the pre-existing condition exclusion in the prior UNUM long-term disability policy. Under the UNUM policy, a pre-existing condition is defined as "a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines **in the three months prior to the insured's effective date.**" Def. Ex. 14 at L-BEN-5 (emphasis added). Therefore, Liberty Life had to examine Youmans' medical records to determine whether, in the three months preceding January 10, 2002, Youmans "received treatment, consultation, care or services" or took prescribed drugs for a sickness or injury for which she is seeking long-term disability benefits. The relevant evidence is summarized chronologically as follows:

| DATE | EVENT |
|---|---|
| September 5, 2001 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| September 28, 2001 | • Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome<br><br>• Prescription from Dr. Frappier for Hyoscyamine |
| October 16, 2001 | Prescription from Dr. Frappier for Hyoscyamine and Diazepam |
| November 9, 2001 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| November 27, 2001 | Prescription from Dr. Frappier for Hyoscyamine and Diazepam |
| December 11, 2001 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| December 20, 2001 | Prescription from Dr. Frappier for Diazepam |
| December 31, 2001 | Prescription from Dr. Frappier for Hyoscyamine |
| January 10, 2002 | EFFECTIVE DATE OF UNUM POLICY |
| June 1, 2002 | EFFECTIVE DATE OF LOWE'S DISABILITY POLICY |
| December 2, 2002 | EFFECTIVE DATE OF DISABILITY |
| February 10, 2003 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| February 27, 2003 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| March 10, 2003 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| March 24, 2003 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| March 27, 2003 | Hospital emergency room record stating Youmans' prior medical history was "[s]ignificant for irritable bowel syndrome" |
| April 9, 2003 | Report from Dr. Desai indicating the results of Youmans' colonoscopy and stating "[p]ossible irritable bowel syndrome" |

| DATE | EVENT |
|---|---|
| April 10, 2003 | Letter from Dr. Desai stating "I believe [Youmans] has irritable bowel syndrome. . . ." |
| April 22, 2003 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |
| May 12, 2003 | Office notes from Dr. Frappier indicating a diagnosis of irritable bowel syndrome |

Youmans sought long-term disability benefits for symptoms of lower abdominal pain and constipation after her hysterectomy. The record is replete with medical documentation that indicates that Dr. Frappier diagnosed and treated Youmans for irritable bowel syndrome prior to and after the effective date of the UNUM policy and Lowe's disability policy. Youmans' condition post-hysterectomy indicated a continuation of irritable bowel syndrome and not a separate medical condition. Accordingly, Youmans' condition was a pre-existing condition for which she could not receive benefits under Lowe's disability policy. This conclusion is supported by Dr. Frappier's medical records, the report from Dr. Desai, and the memorandum from Dr. Miszkiewicz.

Youmans' argument that the removal of a sigmoid polyp during her colonoscopy constitutes a separate diagnosis that has nothing to do with irritable bowel syndrome is wholly unsupported by the record. While it is true that Dr. Desai removed a benign polyp from Youmans' colon during the procedure, Dr. Desai's report indicates that the colonoscopy was normal and that there was no evidence of Youmans having any other condition, such as colitis or diverticulosis, in either the upper or lower colon. See Def. Exs. 11-12. Additionally, and significantly, Dr. Desai's letter to Dr. Frappier expressly states "I believe she has irritable bowel syndrome. . . ." Def. Ex. 12.

26

Youmans also incorrectly states that she was "diagnosed" with fecal retention after her hysterectomy.  As Liberty Life correctly notes in its reply brief, fecal retention is not a "condition" but rather a "symptom," and Dr. Miszkiewicz indicated in his memorandum that the proper term for fecal retention is "constipation," which "is a hallmark of IBS and is rarely impairing."  Def. Ex. 25 at LL-0080.  Furthermore, Dr. Frappier's letters to Liberty Life confirm that the abdominal pain and constipation Youmans was experiencing in 2003 were the result of her irritable bowel syndrome condition.  See Def Ex. 3 and Def. Ex. 24.

Second, even if Youmans did not have a pre-existing condition, the medical evidence establishes that her condition was not so severe so as to preclude her from working as a cashier at Lowe's.  While it is true that Dr. Frappier indicated on the physical capacities form that he believed Youmans was unable to work eight hours each day because of her abdominal pain, he expressly noted that Youmans could work for between four and six hours each day.  See Def. Ex. 4.

Youmans' argument that "[t]he record demonstrates that Defendant was doctor shopping to obtain an opinion to support the decision it wanted to make. . . ." is belied by the record.  The record is devoid of any evidence that Liberty Life was "doctor shopping."  Likewise, there is no basis in the record for Youmans' assertion that Liberty Life credited the opinion of Dr. Miszkiewicz over that of Youmans' treating physician, Dr. Frappier.  Even if there were such evidence, however, it is well established that the "treating physician" rule does not apply in ERISA cases.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  The Court of Appeals for the Sixth Circuit has further held that "[g]enerally, when a plan administrator chooses to rely upon the

27

medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003).  Liberty Life's decision to deny Youmans long-term disability benefits was not based on a rejection of Dr. Frappier's opinions; indeed, Dr. Miszkiewicz's opinion that Youmans experienced no significant change in her irritable bowel syndrome after her hysterectomy is supported by the medical records.

### C. Youmans' Remaining Arguments

In the first amended complaint, Youmans states that "Defendants violated § . . . 503 of ERISA."  First Amend. Compl. at ¶ 36.  Section 503 requires that every employee benefit plan contain a review procedure.  As discussed above, after a review of the first amended complaint, it is clear that Youmans has failed to state a claim under this section of ERISA.  Assuming, arguendo, that she did state a claim as to Liberty Life, her argument would be without merit because the record clearly establishes that Liberty Life provided Youmans with review procedures.  Indeed, Youmans availed herself of these procedures when she challenged Liberty Life's denial of benefits.

To the extent Youmans argues that Liberty Life violated ERISA § 409, which, as discussed above, is a claim for breach of fiduciary duty, she has no standing to assert an individual remedy under this provision.  See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985).  A plaintiff may bring a claim for fiduciary breach only on behalf of the plan.  Id.  Although Youmans attempted to restate this claim as one under ERISA §

28

502(a)(3) in her response brief to Lowe's motion to dismiss, she may not rectify pleading deficiencies through a response brief.  <u>Jocham</u>, 239 F. Supp. 2d at 732.

Likewise, Youmans cannot sustain a cause of action against Liberty Life under ERISA § 510.  <u>See</u> First Amend. Compl. at 38.  As noted above, § 510 is a claim for interference with protected rights.  Youmans failed to plead any facts that Liberty Life took an adverse action against Youmans for the purpose of interfering with her disability benefits.

SO ORDERED.


  s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  April 28, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 28, 2005, by electronic and/or ordinary mail.


  s/Julie Owens
Case Manager
(313) 234-5160